# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ERIC O'KEEFE and WISCONSIN CLUB FOR GROWTH, Inc.,**

        Plaintiffs,

  -vs-

**FRANCIS SCHMITZ, in his official and personal capacities,**

**JOHN CHISHOLM, in his official and personal capacities,**

**BRUCE LANDGRAF, in his official and personal capacities,**

**DAVID ROBLES, in his official and personal capacities,**

**DEAN NICKEL, in his official and personal capacities, and**

**GREGORY PETERSON, in his official capacity,**

        Defendants.

Case No. 14-C-139

# DECISION AND ORDER

Eric O'Keefe is a director for the Wisconsin Club for Growth, Inc. ("WCFG"), a 501(c)(4) social welfare organization that promotes free-market ideas and policies. O'Keefe and WCFG are two among several targets of a secret five-county John Doe criminal investigation. Wis. Stat. § 968.26. This procedure, unique under Wisconsin law, is an "independent, investigatory tool used to ascertain whether a crime has been

committed and if so, by whom." *In re John Doe Proceeding*, 660 N.W.2d 260, 268 (Wis. 2003). O'Keefe alleges that this investigation is being conducted for the primary purpose of intimidating conservative groups, impairing their fundraising efforts, and otherwise preventing their participation in the upcoming election cycle. O'Keefe seeks an order enjoining the defendants from continuing their investigation on the grounds that it is an abuse of prosecutorial power and infringes upon his right to freedom of speech.

Five of the six defendants move to dismiss O'Keefe's complaint: Francis Schmitz, special prosecutor in the current phase of the John Doe investigation; John Chisholm, Milwaukee County District Attorney; Bruce Landgraf and David Robles, Milwaukee County Assistant District Attorneys; and Dean Nickel, a contract investigator for the Government Accountability Board. The last defendant, Gregory Peterson, is a retired appeals court judge now presiding over the John Doe proceeding. Judge Peterson has been served with process, and his answer to the complaint is due on April 29.

For the reasons that follow, the motions to dismiss are denied in their entirety.

**I.  Abstention**

A motion to dismiss based on an abstention doctrine implicates the Court's exercise of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008). Therefore, the Court may look outside the pleadings and consider extrinsic materials in

making its ruling. *Nissan N. Am., Inc. v. Andrew Chevrolet, Inc.*, 589 F. Supp. 2d 1036, 1039 (E.D. Wis. 2008). All five of the moving parties raise *Younger* abstention, so the Court will begin its analysis there.

### A. *Younger* abstention

*Younger* abstention "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). Courts have typically analyzed whether the state proceedings are "judicial in nature," involve "important state interests," and offer "an adequate opportunity to review the federal claim." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 429 (1982)). However, the Supreme Court recently "rephrased the question," such that the so-called *Middlesex* factors "were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking Younger. These factors remain relevant, but the critical consideration . . . is how closely [the proceeding] resembles a criminal prosecution." *Mulholland v. Marion Cnty. Elec. Bd.*, --- F.3d ---, 2014 WL 1063411, at *5 (7th Cir. March 20, 2014) (citing *Sprint Comm'n, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013)). "Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Sprint* at 593.

As stated and clarified in *Sprint*, *Younger* only applies in three "exceptional circumstances." *Id.* at 591. First, *Younger* precludes "federal intrusion into ongoing criminal prosecutions." *Id.* Second, certain "civil enforcement proceedings" warrant abstention. *Id.* Third, *Younger* precludes federal courts from interfering with pending civil proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)). "We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope." *Id.*

Wisconsin's John Doe procedure is an investigatory device, similar to a grand jury proceeding, but lacking the oversight of a jury. It is "not so much a procedure for the determination of probable cause as it is an inquest for the discovery of crime in which the judge has significant powers." *State v. Washington*, 266 N.W.2d 597, 604 (Wis. 1978). "By invoking the formal John Doe investigative proceeding, law enforcement officers are able to obtain the benefit of powers not otherwise available to them, i.e., the power to subpoena witnesses, to take testimony under oath, and to compel the testimony of a reluctant witness." *Id.* The judge's responsibility is to "ensure procedural fairness. The John Doe judge should act with a view toward issuing a complaint or determining that no crime has occurred." *Id.* at 605. So understood, the John Doe proceeding does not fit into any of the categories for *Younger* abstention. It is an investigatory process, not an ongoing criminal prosecution

or civil enforcement proceeding.  Nor is it a proceeding – like a civil contempt order, *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977), or the requirement to post a bond pending appeal, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) – that implicates a State's interest in "enforcing the orders and judgments of its courts, . . ." *Sprint* at 588. The John Doe is a criminal investigation, but it is not "akin to a criminal prosecution." *Id*. at 592. *Younger* is inapplicable until a criminal proceeding is actually commenced. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("*Younger* abstention is appropriate only where there is an action in state court against the federal plaintiff and the state is seeking to *enforce the contested law in that proceeding*") (emphasis added); *United States v. South Carolina*, 720 F.3d 518, 527 (4th Cir. 2013) ("*Younger* does *not* bar the granting of federal injunctive relief when a state criminal prosecution is expected and imminent.  We have also drawn a distinction between the commencement of 'formal enforcement proceedings,' at which point *Younger* applies, versus the period of time when there is only a 'threat of enforcement,' when *Younger* does not apply") (emphasis in original) (internal citations omitted); *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 519 (1st Cir. 2009) (a rule "requiring the commencement of 'formal enforcement proceedings' before abstention is required, better comports with the Supreme Court's decisions in *Younger* and its progeny, in which an indictment or other formal charge had already been filed against the parties seeking relief at the time the federal action was brought").

Further, the Court notes that it would not abstain even if the investigation fit

within one of *Younger*'s exceptional circumstances. As the Court will explain in its discussion of *Pullman* abstention, *infra*, the John Doe proceeding does not offer O'Keefe the opportunity to adjudicate the federal constitutional issues that are raised in this lawsuit. *See, e.g., Time Warner Cable v. Doyle*, 66 F.3d 867, 884 (7th Cir. 1995) ("the critical fact for purposes of the *Younger* abstention doctrine is whether a party has an adequate opportunity to raise constitutional challenges").

Finally, *Younger* abstention does not apply when the plaintiff alleges "specific facts" that the state proceeding was "brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." *Collins v. Kendall Cnty., Ill.*, 807 F.2d 95, 98 (7th Cir. 1986). O'Keefe's complaint easily satisfies this standard, precisely alleging that the defendants have used the John Doe proceeding as a pretext to target conservative groups across the state. *See, e.g., In re John Doe Proceeding*, 680 N.W.2d 792, 808 (Wis. 2004) (reminding "all who participate in John Doe investigations that the power wielded by the government is considerable. Accordingly, there is a potential for infringing on . . . constitutional rights").

### B. *Pullman* abstention

Federal courts also have the discretion to abstain under what is known as *Pullman* abstention. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). This doctrine applies only when there is substantial uncertainty as to the meaning of state law, and there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling. *Int'l Coll. of*

*Surgeons v. City of Chi.*, 153 F.3d 356, 365 (7th Cir. 1998). The purpose of *Pullman* abstention is to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Pullman*, 312 U.S. at 500. It is a narrow exception to the duty of federal courts to adjudicate cases properly before them and is used only in exceptional circumstances. *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008).

In granting a motion to quash subpoenas issued in the John Doe investigation, Judge Peterson held that the subpoenas did not show "probable cause that the moving parties committed any violations of the campaign finance laws. I am persuaded the statutes only prohibit coordination by candidates and independent organizations for a political purpose, and political purpose, with one minor exception not relevant here . . ., requires express advocacy. There is no evidence of express advocacy." ECF No. 1-5. Later, in an order granting the prosecutors' motion to stay pending appeal, Judge Peterson noted that the State's theory of criminal liability "is not frivolous. In fact, it is an arguable interpretation of the statutes. I simply happen to disagree. An appellate court may indeed agree with the State. In that event, I encourage the appellate court to address the alternative and significant Constitutional arguments raised in this case." ECF No. 7-9. The special prosecutor's petition for a supervisory writ is still pending before the court of appeals.

Defendants argue that the Court should abstain because if the court of appeals affirms Judge Peterson's order quashing the subpoenas, the "ultimate and inevitable

- 7 -

consequence will be to terminate the John Doe investigation."[1] Of course, this argument fails to account for the opposite outcome, wherein the John Doe investigation would likely proceed. Whatever the eventual state court ruling may be, it would not obviate the need for a federal court ruling on O'Keefe's constitutional claims. The underlying theory of this case is that O'Keefe, along with other conservative groups, are being targeted for their political activism, whereas the "coordination" activities of those on the opposite side of the political spectrum are ignored. The alleged bogus nature of the prosecutors' theory of criminal liability as a matter of federal constitutional law is simply more evidence of the defendants' bad faith. Even if the need for injunctive relief somehow fell by the wayside, the merits of O'Keefe's claims can and should still be adjudicated here in federal court.

Finally, the *Pullman* doctrine is discretionary, and it is almost never applicable in a First Amendment case because "the guarantee of free expression is always an area of particular federal concern." *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010). The Court will not sidestep its duty to exercise jurisdiction in this context. *Id.* ("constitutional challenges based on the First Amendment rights of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when First Amendment rights are at stake"); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("the First Amendment has its

---

[1] Defendants Chisholm, Landgraf and Robles attribute this quote to Judge Peterson in their brief, but the Court cannot locate when and where Judge Peterson may have made this statement.

fullest and most urgent application to speech uttered during a campaign for political office").

### C. *Burford* abstention

*Burford* abstention applies to "certain types of cases confided by state law to state administrative agencies . . ." *Ill. Bell Tel. Co., Inc. v. Global NAPs, Ill., Inc.*, 551 F.3d 587, 595 (7th Cir. 2008); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Abstention under *Burford* is an "equitable decision [that] balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). This balance "only rarely favors abstention," and the power to dismiss under *Burford* "represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Id.*

As an initial matter, the defendants cannot argue that their investigation implicates an administrative or regulatory scheme, especially since they declined the Attorney General's invitation to refer their investigation to the Government Accountability Board, a government agency with state wide jurisdiction to investigate campaign finance violations. Complaint, Exhibit B. More than that, the *Burford* doctrine cannot be used to cast aside the important First Amendment rights that are at stake in this litigation. *See Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 534

(3d Cir. 1988) (expressing "serious doubts as to whether *Burford* abstention ever would be appropriate where substantial first amendment issues are raised"). Again, the success or failure of O'Keefe's claims do not depend upon the state court's interpretation of its own campaign finance laws. O'Keefe's rights under the First Amendment are not outweighed by the state's purported interest in running a secret John Doe investigation that targets conservative activists.

## II. Standing/Ripeness

Defendants Chisholm, Landgraf and Robles (referred to as the Milwaukee Defendants) argue that the plaintiffs' claims should be dismissed for lack of standing. *Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999) ("if a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under [Rule] 12(b)(1) is the appropriate disposition").

This argument holds no water. "Chilled speech is, unquestionably, an injury supporting standing." *Bell v. Keating*, 697 F.3d 445, 453 (7th Cir. 2012). O'Keefe has engaged in extensive issue advocacy in the past. He wants to jump back into the fray for purposes of the upcoming election cycle, but he is prevented from doing so because he is the target of the John Doe investigation, subjecting him and his associates to secret investigatory proceedings and the threat of criminal prosecution. Thus, O'Keefe has standing to bring this lawsuit. *Id.* at 454 ("plaintiffs in a suit for prospective relief based on a 'chilling effect' on speech can satisfy the requirement that their claim of injury be 'concrete and particularized' by (1) evidence that in the past they have

engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced").

For similar reasons, O'Keefe's claims are clearly ripe for adjudication. They do not depend upon whether he is eventually charged with a crime. *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) (adequate injury where the plaintiff "ceased its activities due to fear of prosecution for not satisfying the reporting and disclosure requirements . . ."). The threat of prosecution is enough. His injury does not involve "uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wis. Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). In "challenges to laws that chill protected speech, the hardship of postponing judicial review weighs heavily in favor of hearing the case." *Id.* The Milwaukee Defendants also ignore the injuries *already suffered* by O'Keefe, which will remain to be adjudicated even if, as noted above, the John Doe investigation is halted.

### III. Failure to state a claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint must be sufficient to state a claim that is plausible on its face, not merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible when it allows the Court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the complaint's well-pleaded allegations as true, drawing all reasonable inferences in favor of the plaintiffs. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007).

To state a claim for selective prosecution or retaliation, a plaintiff must only allege facts to show the exercise of a constitutional right, state action likely to deter that exercise, and that the protected exercise was at least a "motivating factor" in the state action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006); *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). The plaintiffs' 60-page, 225-paragraph complaint easily, and plausibly, sets forth actionable claims for relief.

Some of the defendants attempt to distance themselves from the motives that allegedly underlie the John Doe investigation. For example, Schmitz argues that O'Keefe's official capacity claims should be dismissed because they fail to plausibly allege retaliatory animus. *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006). Here, Schmitz attempts to insulate himself because, unlike the Milwaukee Defendants, he is not a known liberal. However, as the complaint alleges, it is entirely plausible that Schmitz was appointed special prosecutor in an effort to minimize the "appearance of impropriety" because Schmitz "lacked the publicly known ties to liberal politics plaguing" the other defendants. Complaint, ¶ 91. In any event, the Court is not persuaded by Schmitz's attempt to disclaim all knowledge of the retaliatory motive behind an investigation he was chosen to lead. Similarly, the complaint alleges that

Nickel plays an "active and supervisory role," *id.*, ¶ 92, and it also alleges that the Milwaukee Defendants commenced and now actively conduct the investigation. *Id.*, ¶¶ 56-57, 75, 91-92. This is enough to plausibly allege that each defendant meets the "personal responsibility" requirement for liability under 42 U.S.C. § 1983. *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) ("An official satisfies the personal responsibility requirement of section 1983 if he or she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent").

## IV. Immunities

The defendants raise a variety of immunity defenses: sovereign immunity, prosecutorial immunity, qualified immunity, and "quasi-judicial" immunity. Motions to dismiss on immunity grounds are considered under Rule 12(b)(6). Once again, the Court must accept the complaint's well-pleaded allegations as true, drawing all reasonable inferences in favor of the plaintiffs. *Christensen*, 483 F.3d at 457.

### A. Sovereign immunity

The prosecutor-defendants (i.e., the Milwaukee Defendants plus Schmitz) argue that they are entitled to sovereign immunity under the Eleventh Amendment to the extent that O'Keefe seeks injunctive relief against them in their official capacity. This is simply wrong. O'Keefe's complaint rather easily states a claim under *Ex Parte Young*. "In determining whether the doctrine of *Ex Parte Young* avoids an

Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *McDonough Assoc., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013). For similar reasons, none of the defendants can rely on the panoply of immunity defenses to avoid the imposition of injunctive relief. *See, e.g., African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (qualified immunity "not an issue" when injunctive relief is sought); *Martin v. Keitel*, 205 Fed. App'x 925, 928 (3d Cir. 2006) ("Absolute prosecutorial immunity . . . extends only to claims for monetary damages and not to requests for declaratory or injunctive relief") (citing *Supreme Court of Va. v. Consumers Union of the United States*, 446 U.S. 719, 736 (1980)); *Harris v. Champion*, 51 F.3d 901, 905 (10th Cir. 1995) (absolute immunity does not shield judges from "claims for prospective relief") (citing *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)).

**B. Prosecutorial immunity**

Prosecutors enjoy absolute immunity from federal tort liability because of the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by the public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). However, absolute immunity only applies to acts committed within the scope of employment as prosecutors. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-76 (1993). Courts apply a

functional approach, which looks to the "nature of the function performed, not the identity of the actor who performed it . . ." *Id.* at 269.

The employment duties of a prosecutor often "go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work they lose their absolute immunity and have only the immunity, called 'qualified,' that other investigators enjoy when engaged in such work." *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) (citing *Buckley*, *supra*, at 275-76). As the Court has already explained, the John Doe proceeding is an ongoing investigation, not a criminal prosecution. A prosecutor's absolute immunity is "limited to the performance of his prosecutorial duties, and not to other duties to which he might to assigned by his superiors or perform on his own initiative, such as *investigating a crime before an arrest or indictment*, . . ." *Id.* (emphasis added). Put another way, a prosecutor "does not enjoy absolute immunity before he has probable cause." *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012); *Buckley* at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested"). As the defendants admit, the John Doe proceeding seeks "information necessary to *determine whether probable cause exists* that Wisconsin's campaign finance laws have been violated." Chisholm's Motion to Dismiss at 13 (emphasis added).

The prosecutors argue that the actual existence of probable cause is not the precise trigger for prosecutorial immunity. For example, determining whether

charges should be brought and *initiating* a prosecution obviously qualify as functions that are "intimately associated with the judicial phase of the criminal process." *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012). Yet the Court has no way of knowing if the prosecutors are currently determining whether charges should be brought, or whether this supposedly ongoing determination stretches back for months on end. On the other hand, O'Keefe plausibly alleges that he is being investigated solely because of his political ideology, with no particular eye towards the actual commencement of a criminal prosecution. *Buckley* at 273 (prosecutor entitled to absolute immunity for the "professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury *after a decision to seek an indictment has been made*") (emphasis added). In other words, O'Keefe does not attempt to hold the prosecutors liable for their participation in the formal processes of the John Doe proceeding. Instead, he calls them to account for pursuing the investigation in the first instance. *See Burns v. Reed*, 500 U.S. 478, 487 (1991) (finding that a prosecutor was entitled to immunity for his participation in a probable cause hearing, but not for his "motivation in seeking the search warrant or his conduct outside of the courtroom relating to the warrant"). This is more than enough to state a claim that avoids the absolute immunity defense. The prosecutors cannot insulate their investigatory, non-prosecutorial activities under the guise of evaluating evidence.

### C. Qualified immunity

To determine whether the defendants are entitled to qualified immunity, the Court must address two issues: (1) whether the defendants violated plaintiffs' constitutional rights, and (2) whether the right at issue was clearly established at the time of the violation. *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014). As the Court has already explained, the complaint states plausible claims for relief against each of the defendants. As for the second prong, the defendants cannot seriously argue that the right to express political opinions without fear of government retaliation is not clearly established. *See, e.g., Delgado v. Jones*, 282 F.3d 511, 520 (7th Cir. 2002); *Pieczynski v. Duffy*, 875 F.2d 1331, 1336 (7th Cir. 1989); *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) ("This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights").

### D. Quasi-judicial immunity

Out of all the defendants, only Schmitz moves to dismiss on the grounds that he is entitled to quasi-judicial immunity, which applies to persons who are "performing a ministerial function at the direction of the judge . . ." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) ("when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate"). As the Court has

already explained, Schmitz's actions, according to the well-pleaded allegations of the complaint, go far beyond the performance of ministerial duties at the direction of the John Doe judge. Rather, the complaint plausibly alleges that Schmitz is an active participant in the ongoing, unlawful investigation into the plaintiffs' supposed violation of Wisconsin's campaign finance laws. *See*, *e.g.*, Complaint, Ex. C, State's Consolidated Response to Motion to Quash (signed by Schmitz).

## V. Indispensible parties

Finally, the defendants argue that the District Attorney for Iowa County (O'Keefe's county of residence), as well as some other district attorneys, should have been joined as necessary, indispensable parties. Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19(a). To determine whether a party is a necessary party, the Court must consider (1) whether complete relief can be accorded without joinder, (2) whether the absent party's ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless he is joined. *Davis Co. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). Defendants argue that any criminal prosecution against O'Keefe would have to be brought in Iowa County, but this does not mean that the Iowa County District Attorney is an indispensible party. O'Keefe is trying to stop a John Doe investigation that happens to encompass Iowa County, but the Iowa County District Attorney has no control over the direction and conduct of the investigation.

Ultimately, the Court is not at all persuaded that any other district attorneys are

indispensable parties, but if they are, the proper remedy would be joinder, not dismissal. Fed. R. Civ. P. 19(a)(2). The Court will not dismiss the complaint on these grounds.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The plaintiffs' motions to file materials under seal and to file an oversized memorandum [ECF Nos. 70, 71] are **GRANTED**;

2. The defendants' motions to seal and to file reply briefs [ECF Nos. 72, 73, 75, 76, 78] are **GRANTED**;

3. The plaintiffs' motion for leave to file supplemental authority and to seal [ECF No. 80] is **GRANTED**;

4. Schmitz's motion for leave to file a response to the notice of supplemental authority and to seal [ECF No. 82] is **GRANTED**; and

5. The defendants' motions to dismiss [ECF Nos. 40, 43 and 52] are **DENIED**.

Dated at Milwaukee, Wisconsin, this 8th day of April, 2014.

                                        **BY THE COURT:**

                                        */s/ Rudolph T. Randa*
                                        **HON. RUDOLPH T. RANDA**
                                        **U.S. District Judge**