**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

---

**ERIC O'KEEFE and WISCONSIN
CLUB FOR GROWTH, INC.,**

        **Plaintiffs,**

    **v.**

**FRANCIS SCHMITZ, in his official and
    personal capacities,
JOHN CHISHOLM, in his official and
    personal capacities,
BRUCE LANDGRAF, in his official and
    personal capacities,
DEAN NICKEL, in his official and
    personal capacities, and
GREGORY PETERSON, in his official
    capacity,**

        **Defendants.**

Civil Case No. 14-cv-00139

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE AND
UNSEAL OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,
AMERICAN SOCIETY OF NEWS EDITORS, WISCONSIN BROADCASTERS
ASSOCIATION, WISCONSIN FREEDOM OF INFORMATION COUNCIL, AND
WISCONSIN NEWSPAPER ASSOCIATION**

---

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.   THIS COURT SHOULD PERMIT THE COALITION TO INTERVENE IN
     ORDER TO VINDICATE THE FIRST AMENDMENT AND COMMON LAW
     RIGHTS OF ACCESS TO COURT RECORDS AND PROCEEDINGS ........................ 6

II.  THE PUBLIC HAS A FIRST AMENDMENT AND COMMON LAW RIGHT
     OF ACCESS TO CIVIL PROCEEDINGS THAT MAY BE OVERCOME ONLY
     WHERE NECESSARY TO SERVE A COMPELLING INTEREST .............................. 7

     A.   The Public Is Presumptively Entitled To Access Court Documents And
          Proceedings ........................................................................................................ 7

     B.   Presumptively Open Judicial Records And Court Documents May Be
          Sealed Only To The Extent Necessary To Serve A Compelling,
          Overriding Interest ............................................................................................. 9

III. THE SEALING ORDERS VIOLATE THE FIRST AMENDMENT AND
     COMMON LAW RIGHTS OF ACCESS OF THE PRESS AND THE PUBLIC ........... 11

     A.   The Court Made No Findings That Would Justify Its Sealing Orders ................. 11

     B.   There Is No Compelling, Overriding Need For The Broad Sealing Orders ......... 12

          1.   The Filings Cannot Be Kept Under Seal Simply Because They
               Contain Information Related To A John Doe Proceeding ......................... 13

          2.   Any Interest In Protecting The "Effectiveness" Of The John Doe
               Proceeding Cannot Justify The Sealing Orders ....................................... 19

     C.   The Press And The Public Have A Substantial, Overriding Interest In
          Obtaining Access To The Parties' Unredacted Filings In This Case.................... 22

CONCLUSION.................................................................................................................... 24

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bond v. Utreras,*
585 F.3d 1061 (7th Cir. 2009) ........................................................................ 7

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,*
178 F.3d 943 (7th Cir. 1999) ........................................................................ 9

*Citizens First Nat'l Bank,*
178 F.3d at 945–46 .............................................................................. 12, 13

*Dixon v. Starring,*
2011 U.S. Dist. LEXIS 123982 (E.D. La. Oct. 26, 2011) ........................................ 13

*Douglas Oil Co. v. Petrol Stops Northwest,*
441 U.S. 211 (1979).......................................................................................... 16

*El Vocero de P.R. v. Puerto Rico,*
508 U.S. 147 (1993)............................................................... 14, 17, 18, 19

*Ft. Wayne Journal-Gazette v. Baker,*
788 F.Supp. 379 (N.D. Ind. 1992) .................................................................. 13

*Globe Newspaper Co. v. Fenton,*
819 F. Supp. 89 (D. Mass. 1993) .................................................................. 19

*Globe Newspaper Co. v. Pokaski,*
868 F.2d 497 (1st Cir. 1989) ............................................................................ 19

*Globe Newspaper Co. v. Superior Ct.,*
457 U.S. 596 (1982)............................................................................................ 9

*Globe Newspaper,*
457 U.S. at 604–05 ................................................................................... 11, 17

*Grove Fresh Distribs. v. Everfresh Juice Co.,*
24 F.3d 893 (7th Cir. 1994) ............................................... 7, 8, 9, 12, 17

*In re Associated Press,*
162 F.3d at 506 ................................................................. 10, 11, 12, 22

*In re Continental Illinois Sec. Litigation,*
732 F.2d 1302 (7th Cir. 1984) .................................................................. 8, 18

*In re Doe,*
660 N.W.2d at 277 ...................................................................... 19, 20, 21

*In re Krynicki,*
983 F.2d 74 (7th Cir. 1992) .......................................................... 1, 3, 11

*In re Motions of Dow Jones & Co.,*
142 F.3d 496 (D.C. Cir. 1998)........................................................................ 16

Case 2:14-cv-00139-RTR   Filed 05/01/14   Page 3 of 30   Document 173

*Jessup v. Luther*,
227 F.3d 993 (7th Cir. 2000) ........................................................... 7

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ....................................................................... 23

*Nixon v. Warner Communications*,
435 U.S. 589 (1978) ......................................................................... 8

*Press-Enterprise Co. v. Superior Court*,
478 U.S. at 1 (1986) ("*Press-Enterprise II*") .................................. 14, 15, 17, 18, 19

*Press-Enterprise I*,
464 U.S. at 510 ................................................................................. 9

*Richmond Newspapers v. Virginia*,
448 U.S. 555 (1980) ......................................................................... 3

*Smith v. United States Dist. Court for Southern Dist.*,
956 F.2d 647 (7th Cir. 1992) ................................................... 8, 9, 11, 23

*State ex rel. Alford v. Thorson*,
202 Wis. 31 (Wis. 1930) ................................................................ 16

*State ex rel. Newspapers, Inc. v. Circuit Court for Milwaukee County*,
124 Wis. 2d 499 (Wis. 1985) ......................................................... 17

*State ex rel. Unnamed Person No. 1 v. State (In re Doe)*,
660 N.W.2d 260 (Wis. 2003) ........................................................ 16

*State v. Keyes*,
75 Wis. 288 (Wis. 1889) ................................................................ 15

*State v. Unnamed Defendant*,
150 Wis. 2d 352 (Wis. 1989) ........................................................ 14

*State v. Washington*,
83 Wis. 2d 808 (Wis. 1978) ...................................................... 14, 15

*Union Oil Co. of Cal. v. Leavell*,
220 F.3d 562 (7th Cir. 2000) ........................................................... 9

*United States v. Doe*,
63 F.3d 121 (2d Cir. 1995) ............................................................ 10

*United States v. Edwards*,
672 F.2d 1289 (7th Cir. 1982) ............................................. 1, 9, 10, 12

*United States v. Peters*,
754 F.2d 753 (7th Cir. 1985) ........................................................ 10

*Unnamed Defendant*,
150 Wis. 2d at 359 ........................................................................ 16

Case 2:14-cv-00139-RTR   Filed 05/01/14   Page 4 of 30   Document 173

*Va. Dep't of State Police v. Washington Post*,
386 F.3d 567 (4th Cir. 2004) ............................................................. 22

*Virginia Pharm. Bd. v. Virginia Consumer Council*,
425 U.S. 748 (1976) ........................................................................... 23

*Washington Post v. Robinson*,
935 F.2d 282 (D.C. Cir. 1991) ........................................................... 22

*Wisconsin v. Rindfleisch*,
No. 2013AP362-CR (Wis. Ct. App. Feb. 10, 2014) ............................ 4

**Statutes**

Wis. Stat. 968.26(3) ................................................................................ 4

**Other Authorities**

"Wisconsin Political Speech Raid,"
Nov. 18, 2013, *available at*
http://online.wsj.com/news/articles/SB10001424052702304799404579155953286552832 ... 5,
20, 24

"Wisconsin Political Speech Victory,"
Jan. 10, 2014, *available at*
http://online.wsj.com/news/articles/SB10001424052702303393804579312670195586080 .. 21

M. D. Kittle, "D'oh!  John Doe prosecutors claim secrecy protection—after filing secret
documents,"
*Wisconsin Reporter*, Mar. 14, 2014, *available at*  http://watchdog.org/132803/secrecy-
prosecutors-lawsuit/ ............................................................................ 21

M. D. Kittle, "Secret agent Dean Nickel's defense: Dean Nickel is not responsible,"
*Wisconsin Reporter*, Mar. 13, 2014, *available at* http://watchdog.org/132551/secret-civil-
right-lawsuit/ ...................................................................................... 21

**Rules**

Fed. R. Crim. P. 6(e)(5) ......................................................................... 16

## INTRODUCTION

The civil lawsuit pending before this Court involves allegations that government officials—a judicial officer and members of the Milwaukee County District Attorney's Office—initiated and misused a state criminal procedure to intimidate and retaliate against perceived political adversaries. According to the complaint, defendants, acting in both their personal and official capacities, launched a secret "John Doe" proceeding under section 968.26 of the Wisconsin Statutes as a means to stifle plaintiffs' constitutionally protected right to engage in political speech, among other things. In virtually every substantive filing in this case, the Court has summarily sealed all information concerning that state court John Doe proceeding.

The press and the general public have a constitutional and common law right of access to civil proceedings and court documents, including the filings sealed in this case. The First Amendment right of access can be overcome only by a showing that restrictions on access are necessary to serve a compelling interest, and any such restrictions must be narrowly tailored. Similarly, to overcome the common law's "strong presumption" in favor of access to court documents, a court must find, "on the basis of articulable facts known to the court," overriding factors that justify closure, such as prejudice to a defendant's constitutional right to a fair trial. *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982). Because "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat," any restriction on the public's access to court documents "requires rigorous justification." *In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). And a court must set forth on the record the specific findings justifying a sealing order in a manner sufficient to permit appellate review.

This Court's sealing orders violate the public's constitutional and common law rights of access to court documents. Before entering its sealing orders, the Court was required to make

specific, reviewable findings in support of sealing.  It did not do so.  Indeed, the sole apparent reason for the sealing orders is the existence of a secrecy order entered in the John Doe proceeding—an order which is itself secret and under seal.  That the John Doe judge deemed the entirety of the proceeding before him "secret," however, does not relieve *this* Court of its independent obligation to determine whether sealing the record in *this* separate lawsuit is warranted.

Under the circumstances presented here, no compelling or overriding interest exists that would justify sealing all information in the parties' filings related to the John Doe proceeding. First, John Doe proceedings are not entitled to any special presumption of secrecy that would permit the broad sealing of related court documents.  In fact, John Doe proceedings are *presumptively open* to the public under both Wisconsin and federal law, and section 968.26 cannot, consistent with the First Amendment, be interpreted as authorizing restrictions on the public's right of access that would be impermissible in any other context.  Second, public scrutiny poses no threat to this particular John Doe proceeding.  A considerable amount of information about the proceeding, including details placed into the public domain by defendants, has already been disclosed to the public and reported in the press.  Thus, to the extent absolute secrecy was ever necessary to ensure the effectiveness of the John Doe proceeding, that interest is no longer present.  Third, the public has a powerful interest in obtaining access to the sealed information in this case.  This litigation arises out of alleged abuse of a judicial procedure by local government officials for political gain.  It thus implicates the public's interest in observing the functioning of its judicial system and the conduct of the executive branch.  The sealing orders frustrate a "core purpose" of the First Amendment:  "to assur[e] freedom of communication on

matters relating to the functioning of government." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 575 (1980).

This Court's sealing orders violate the public's constitutional and common law rights of access to judicial records in civil matters; they obstruct the public's ability to observe the conduct of its courts and members of Wisconsin's executive branch; and they violate the fundamental principle that judges are to "issue public decisions after public arguments based on public records." *In re Krynicki*, 983 F.2d at 75. For the reasons set forth below, the Reporters Committee for Freedom of the Press, American Society of News Editors, Wisconsin Broadcasters Association, Wisconsin Freedom of Information Council, and Wisconsin Newspaper Association (collectively, the "Coalition") respectfully requests that this Court grant their motion, vacate the sealing orders, and permit the Coalition, the press, and the public to access the entirety of the parties' filings in this case. In the event the Court determines that a limited amount of the sealed information must remain sealed for some period of time to serve a compelling interest, the Coalition respectfully requests that the Court enter a narrowly tailored sealing order that is no broader than necessary to serve that interest, and release redacted portions of the sealed records as appropriate.

## **BACKGROUND**

In this case, the Wisconsin Club for Growth, a political advocacy group, and its director, Eric O'Keefe, challenge the constitutionality of a John Doe proceeding conducted by local government officials in Wisconsin. Redacted Compl., ECF No. 1, Feb. 10, 2014. A John Doe proceeding is a statutory procedure unique to Wisconsin law. It takes place before a single state court judge who determines whether probable cause exists to issue a criminal complaint. The judge also has "investigatory" powers to subpoena and examine witnesses to "ascertain whether a crime has been committed and by whom committed." *See* Wis. Stat. 968.26(2)(c)–(d). The

judge "may" order that the proceeding "be secret." Wis. Stat. 968.26(3). "[I]f the proceeding is secret, the record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used." *Id*.

According to O'Keefe and the Club, defendant officials in the Milwaukee County District Attorney's Office began the first phase of a secret John Doe proceeding in 2010, purportedly to investigate the misappropriation of funds by employees in the Milwaukee County Executive's Office. Redacted Compl., ECF No. 1 at ¶¶ 54, 64–66, Feb. 10, 2014. O'Keefe and the Club allege, however, that the proceeding was merely a fishing expedition by political opponents of then-Milwaukee County Executive and Wisconsin gubernatorial candidate Scott Walker, with the goal of linking Walker to any violation of law. *Id.* at ¶ 68. That initial phase resulted in a handful of convictions, including the conviction of Walker aide Kelly Rindfleisch. *Id.* at ¶ 177. Earlier this year, the Coalition and other media organizations successfully intervened and obtained access to previously sealed court documents containing information relating to the John Doe proceeding that led to Rindfleisch's conviction. *See Wisconsin v. Rindfleisch*, No. 2013AP362-CR (Wis. Ct. App. Feb. 10, 2014) (*slip op.*).

In 2012, the Milwaukee County District Attorney's Office began a second phase of the John Doe proceeding. This phase targeted O'Keefe and the Club. Media reports indicate that defendant officials subpoenaed O'Keefe, the Club, and other conservative political groups that supported Walker in his highly-publicized battle with state unions and his subsequent recall election. According to these reports, the ostensible purpose of the subpoenas was to determine

whether political organizations, including the Club, had committed state campaign finance violations during the 2011 and 2012 campaigns to recall Walker and certain state legislators.[1]

On February 10, 2014, O'Keefe and the Club filed this lawsuit alleging that the second phase of the John Doe proceeding was retaliation for the exercise of their constitutionally protected right to engage in political speech. They asked this Court to preliminarily enjoin the proceeding. "[T]o comply with the significant restrictions imposed upon them" by a secrecy order entered in the John Doe proceeding, O'Keefe and the Club moved to seal substantial portions of their filings, asserting only that compliance with the secrecy order satisfied the "good cause" standard of this Court's Local Rule 79(d)(4)). Mot. to Seal, ECF No. 3 at 1, Feb. 10, 2014; *see also* ECF Nos. 70–73, 75, 76, 78, 80, 120, 151. Defendants, who have opposed the preliminary injunction, and moved to dismiss the case, followed suit. *See* Mots. to Seal, ECF Nos. 33, 39, 42, 47, 49, 58, 82, 101, 106, 107. Summarily concluding that the good cause requirement was satisfied, this Court granted the parties' motions to seal.[2] On April 8, 2014, the Court denied defendants' motion to dismiss. Decision and Order, ECF No. 83, Apr. 8, 2014.

---

[1] See "Wisconsin Political Speech Raid," Nov. 18, 2013, *available at* http://online.wsj.com/news/articles/SB10001424052702304799404579155953286552832.

[2] *See* Order, ECF No. 8, Feb. 12, 2014; Order, ECF No. 64, Mar. 13, 2014; Decision and Order, ECF No. 83, Apr. 8, 2014; Order, ECF No. 132, Apr. 22, 2014; Orders, ECF Nos. 138–140, Apr. 22, 2014; Text Only Order, Apr. 28, 2014. Collectively, these orders seal the following: (1) Plaintiffs' Complaint, ECF No. 1; (2) Plaintiffs' Motion for Preliminary Injunction, ECF No. 4; (3) Plaintiffs' Motion for Leave to File Oversized Memorandum in Support of Preliminary Injunction, ECF No. 5; (4) Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction and attached exhibits, ECF No. 7; (5) Defendants Schmitz Chisholm, Landgraf, Robles, and Nickel's Memorandum in Support of Their Motion to Stay Briefing on Injunctive Relief, ECF Nos. 35, 36, and 38; (6) Defendant Nickel's Memorandum in Support of his Motion to Dismiss, ECF No. 54; (8) Defendant Schmitz's Memorandum in Support of his Motion to Dismiss, ECF No. 44; (9) Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 48; (10) Defendants Chisholm, Landgraf, and Robles' Memorandum in Support of Their Motion to Dismiss and supporting declaration of Samuel J. Lieb, ECF Nos. 53 and 60; (11) Defendants Chisholm,

<u>**ARGUMENT**</u>

I.  **This Court Should Permit The Coalition To Intervene In Order To Vindicate The First Amendment And Common Law Rights Of Access To Court Records And Proceedings**

The Reporters Committee for Freedom of the Press is a non-profit organization with tax-exempt status under 26 U.S.C. § 501(c)(3).  Founded in 1970, the Committee is dedicated to preserving the freedom of the press guaranteed by the First Amendment.  In its more than 40-year history, the Committee has represented numerous members of the news media as parties, and has intervened as both a member of the public and an advocate for the press in litigation presenting important issues that affect the public's right to be informed, through the media, of the activities of their government and elected representatives.

The Committee seeks to intervene in this matter for the limited purpose of moving to unseal court documents that this Court has permitted the parties to file under seal.  It is joined by four other non-profit organizations and associations—the American Society of News Editors, Wisconsin Broadcasters Association, Wisconsin Freedom of Information Counsel, and Wisconsin Newspaper Association—that have a substantial interest in ensuring that the press and

Landgraf, and Robles' Reply Memorandum in Support of Their Joint Motion to Stay Briefing on Injunctive Relief, ECF No. 55; (12) Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, ECF No. 84; (13) Plaintiffs' Reply in Support of its Motion for Preliminary Injunction, ECF No. 85; (14) Defendant Schmitz's Reply in Support of his Motion to Dismiss, ECF No. 86; (15) Defendants Chisholm, Landgraf, and Robles' Reply in Support of their Motion to Dismiss, ECF No. 87; and (16) Defendant Nickel's Reply in Support of his Motion to Dismiss, ECF No. 88; (17) Plaintiffs' Notice of Supplemental Authority, ECF No. 89; (18) Defendant Schmitz's Response to Plaintiffs' Notice of Supplemental Authority, ECF No. 90; (19) Defendant Nickel's Supplemental Response to Plaintiffs' Motion for Preliminary Injunction and supporting declarations of Nickel and Kevin J. Kennedy, ECF Nos. 102–104; (20) Defendants Chisholm, Landgraf, and Robles' Supplemental Response to Plaintiffs' Motion for Preliminary Injunction and supporting declarations of Samuel J. Leib, Larry E. Nelson, and Ismael R. Ozanne, ECF Nos. 109, 110, 112, and 113; (21) Defendant Schmitz's  Supplemental Response to Plaintiffs' Motion for Preliminary Injunction and supporting declaration of Schmitz, ECF Nos. 117; and (22) Plaintiffs' Response in Opposition to Defendant Schmitz's Motion for Protective Order and Exhibit A thereto, ECF No. 152.

public be given access to the sealed filings in this case. In October 2013, the Wisconsin Court of Appeals granted a motion to intervene filed by the Coalition and other media organizations in the criminal appeal of Kelly Rindfleisch, former deputy chief of staff to Wisconsin Governor Scott Walker, for the purpose of opposing a motion to seal filed by Rindfleisch. Rindfleisch's conviction arose out of the initial phase of the John Doe proceeding at issue here.

"[I]t is beyond dispute" that "members of the media and the public may bring third-party challenges to protective orders that shield court records and court proceedings from public view." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009); *see also Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) ("The right to intervene to challenge a closure order is rooted in the public's well-established right of access to public proceedings."). The Seventh Circuit has "recognized intervention as the logical and appropriate vehicle by which the public and the press may challenge" such orders, as it "not only guarantees the public's right to be heard," but also ensures that the question of the public's right of access will "be examined in a procedural context that affords the court an opportunity for due deliberation." *Jessup*, 227 F.3d at 997 (internal citations omitted) (reversing district court's order denying newspaper's motion to intervene to unseal settlement agreement). Because "[r]epresentatives of the press and general public must be given an opportunity to be heard on the question of their exclusion from [court] proceedings or access to documents," the Court should grant the Coalition's motion to intervene. *Id.*

## II.    The Public Has A First Amendment And Common Law Right Of Access To Civil Proceedings That May Be Overcome Only Where Necessary To Serve A Compelling Interest

### A.    The Public Is Presumptively Entitled To Access Court Documents And Proceedings

"The public's right of access to court proceedings and documents is well-established." *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (citing *Press-*

7

*Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press Enterprise I*")); *Nixon v. Warner Communications*, 435 U.S. 589 (1978). While originally recognized in the context of criminal proceedings, the right of access extends to civil actions like this one. *See Grove Fresh Distribs.*, 24 F.3d at 897; *Smith v. United States Dist. Court for Southern Dist.*, 956 F.2d 647, 649–650 (7th Cir. 1992) (the "well recognized" common law right of access "to judicial records and documents" applies "to civil as well as criminal cases"); *see also In re Continental Illinois Sec. Litigation*, 732 F.2d 1302, 1308–1309 (7th Cir. 1984) (recognizing First Amendment right of access to civil proceedings and documents).

The public's right of access is rooted in both the First Amendment and the common law. The Seventh Circuit has made clear that the public has a First Amendment right of access to "any documents on which the court relie[s] in making its decisions." *Grove Fresh Distribs.*, 24 F.3d at 895, 897, 898. This constitutional right of access arises out of the recognition that "[p]ublic scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Grove Fresh Distribs.*, 24 F.3d at 897 (citing *Richmond Newspapers*, 448 U.S. 555).

"More general in its contours" than the right of access afforded by the First Amendment, the public's common law right of access "establishes that court files and documents" are presumptively open to the public. *Grove Fresh Distribs.*, 24 F.3d at 897 (citation omitted); *see also Smith*, 956 F.2d at 649–50. This broad common law right of access applies to "everything in the record," including "items not admitted into evidence," "materials on which a court relies in determining the litigants' substantive rights," and "transcripts of proceedings." *Smith*, 956 F.2d at 648, 650 (holding that the public's right of access applied to a memo "sent by the Clerk of the Court to all judges in the district" even though it was neither evidence in the case nor filed on the

court's docket, because the judge had relied on it in denying a motion). The "policy behind" this longstanding common law presumption is "that what transpires in the courtroom is public property." *Smith*, 956 F.2d at 650 (citation omitted); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (because "the public at large pays for the courts," it "has an interest in what goes on at all stages of a judicial proceeding") (citation omitted). Like its constitutional counterpart, the common law right of access "is fundamental to a democratic state" because it "serves to produce 'an informed and enlightened public opinion'" about the functioning of our court system. *Edwards*, 672 F.2d at 1294 (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976)).

### B. Presumptively Open Judicial Records And Court Documents May Be Sealed Only To The Extent Necessary To Serve A Compelling, Overriding Interest

Because "[j]udicial proceedings are public rather than private property," court documents and records must be "as open as possible" to public inspection. *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). A court must "be firmly convinced that disclosure is inappropriate before arriving at a decision limiting access," and "[a]ny doubts must be resolved in favor of disclosure." *Grove Fresh Distribs.*, 24 F.3d at 897 (citing *In re Continental Illinois Securities Litigation*, 732 F.2d at 1313); *see also In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998).

In light of the public's substantial interest in observing its judicial system, the First Amendment right of the public and the press to access court documents can only be overcome by a showing that suppression is both "*essential* to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510 (italics added); *see also Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 607 (1982) (suppression must be "necessitated by

Case 2:14-cv-00139-RTR   Filed 05/01/14   Page 14 of 30   Document 173

a compelling governmental interest").[3]  For a party seeking to restrict public access to court documents, surviving such strict scrutiny is a "formidable task."  *In re Associated Press*, 162 F.3d at 506.  A court entering an order denying the public access to its documents and records must "articulate on the record" the compelling interest of "higher value" that necessitates such an order, "along with findings specific enough that a reviewing court can determine whether [it] was properly entered."  *Id*. at 510 & n.11.  Specifically, "the district court must (1) identify an 'overriding interest' requiring closure; (2) justify that interest by finding that closure is the only alternative that can serve that interest after specifically considering alternatives to closure; and, (3) 'narrowly tailor' the closure order to protect that interest."  *United States v. Peters*, 754 F.2d 753, 760 (7th Cir. 1985).

Similarly, to overcome the common law's "strong presumption" that judicial records are to be open to the public, the Court must find that the values served by openness are outweighed by factors that militate against public access—such as that the "records would be used for 'improper purposes,'" or that disclosure would prejudice a constitutional right.  *Edwards*, 672 F.2d at 1293 (citations omitted) (stating that an appropriate consideration is whether access "would prejudice the due process rights of a criminal defendant").  In the common-law context, the Seventh Circuit has "stress[ed] that it is vital for a court clearly to state the basis" of any ruling denying the public access to judicial records and other court documents, supported with "articulable facts known to the court," in order to "permit appellate review of whether relevant factors were considered and given appropriate weight."  *Id*.

---

[3]  *See United States v. Doe*, 63 F.3d 121, 128 n.3 (2d Cir. 1995) (finding no substantive distinction between the terms "compelling," "overriding," and "higher value" that the Supreme Court has used "to describe the type of interest that a party must advance in order to justify closure").

10

**III.** **The Sealing Orders Violate The First Amendment And Common Law Rights Of Access Of The Press And The Public**

The public and the press plainly have a First Amendment and common law right to access the filings that this Court has placed under seal. They are documents filed in a judicial proceeding that this Court will rely upon in adjudicating this case. *See Smith*, 956 F.2d at 648, 650; *see also In re Krynicki*, 983 F.2d at 75. Indeed, this Court has already relied on sealed judicial records in denying defendants' motion to dismiss. *See* Decision and Order, ECF No. 83, Apr. 8, 2014.

The right of access is especially strong in this case because it concerns alleged misconduct by government officials. *Smith*, 956 F.2d at 650 (citation omitted). As the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Id.*; *see also Globe Newspaper*, 457 U.S. at 604–05 (explaining that the "expressly guaranteed freedoms of the First Amendment shared a common core purpose of assuring freedom of communication on matters relating to the functioning of government") (citation omitted).

As demonstrated below, the sealing orders must be vacated because this Court has not identified a compelling reason for secrecy sufficient to override the public's right of access—and none exists.

**A.** **The Court Made No Findings That Would Justify Its Sealing Orders**

The sealing orders must be vacated because the Court made no findings—let alone findings "specific enough" to allow for appellate review—of any compelling interest of "higher value" sufficient to overcome the public's First Amendment right of access. *In re Associated Press*, 162 F.3d at 510 & n.11. Nor did the Court articulate any basis for concluding that the

Case 2:14-cv-00139-RTR   Filed 05/01/14   Page 16 of 30   Document 173

public's common law right of access to that information is outweighed. *Edwards*, 672 F.2d at 1294. The Court sealed the filings in summary orders, stating only that there was "good cause" to seal under Local Rule 79(d)(4). *See* Order, ECF No. 8, Feb. 12, 2014; Order, ECF No. 64, Mar. 13, 2014. This summary finding of "good cause" falls far short of satisfying the strict scrutiny demanded of any request to limit the public's First Amendment and common law rights of access to court documents.

As the Seventh Circuit has held, a district court must identify on the record the compelling interests served by an order limiting the public's constitutional and common law rights of access to particular court documents, and explain how its order is narrowly tailored to serve those interests. *In re Associated Press*, 162 F.3d at 510; *Edwards*, 672 F.2d at 1294. *See also Grove Fresh*, 24 F.3d at 899 (emphasizing that "the trial judge's responsibilities are heightened" and "the litigants' purported interest in confidentiality must be scrutinized heavily" when "the rights of litigants come into conflict with the rights of the media and public at large"). Because the Court has not satisfied these requirements, the sealing orders must be vacated.

### B. There Is No Compelling, Overriding Need For The Broad Sealing Orders

The sole basis for the parties' motions to seal was a secrecy order entered in the state court John Doe proceeding. *See* Mots. to Seal, ECF Nos. 3, 33, 39, 42, 47, 49, 58. The fact that the John Doe judge entered a secrecy order, however, does not relieve *this* Court of its independent obligation to evaluate whether the federal constitutional and common law rights of the press and the public require access to judicial records placed on its docket in this separate proceeding. "The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record" of proceedings in his or her court. *Citizens First Nat'l Bank*, 178 F.3d at 945–46 (finding "blanket" protective order insufficient to allow a portion of the appellate record to be filed under seal); *see also Dixon v.*

*Starring*, 2011 U.S. Dist. LEXIS 123982, *2-4 (E.D. La. Oct. 26, 2011) (denying motion to seal documents subject to a protective order entered in a separate state court action despite assertion that sealing was "necessary to comply with the terms" of the state court's order).

Thus, regardless of the ostensible grounds for the John Doe judge's secrecy order,[4] this Court "may not rubber stamp" his determination that all information concerning the John Doe proceeding should be secret. *Citizens First Nat'l Bank*, 178 F.3d at 945–46; *cf. Ft. Wayne Journal-Gazette v. Baker*, 788 F.Supp. 379, 385–87 (N.D. Ind. 1992) (holding that protective order entered by judge in state court proceeding "offend[ed] the presumption of access to court proceedings, as guaranteed by the First Amendment" where, *inter alia*, it was "apparent that the [order] was not narrowly tailored" and no compelling interest or "extraordinary circumstance" was identified which required closure of the state court hearing). For the reasons set forth below, the Court should evaluate any claimed need for secrecy, vacate its sealing orders, and grant the public access to the entirety of the parties' filings in this case.

> **1.    The Filings Cannot Be Kept Under Seal Simply Because They Contain Information Related To A John Doe Proceeding**

Any request made to this Court to seal documents relating to the John Doe proceeding must be evaluated by the same standards that would be applicable to any other request to seal court documents. That the documents at issue here contain information that a John Doe judge may have at one time (correctly or incorrectly) deemed "secret" is not a sufficient justification for this Court to seal those documents in this lawsuit. Wisconsin John Doe proceedings are *presumptively open* to the public under both state and federal law, and section 968.26 cannot,

---

[4]  Because the secrecy order entered in the John Doe proceeding has itself been sealed, neither the Coalition nor the public are privy to the John Doe judge's stated basis for concluding that the entirety of the proceeding before him, and any information related thereto,  must be secret.

consistent with the First Amendment, be interpreted as either creating a special presumption in favor of secrecy, or authorizing unconstitutional restrictions on the public's rights of access.

*(a)* ***John Doe Proceedings Are Presumptively Open To The Public Under Wisconsin Law***

A John Doe proceeding is akin to a preliminary or probable cause hearing, which is presumptively open to the press and the public. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. at 1, 13 (1986) ("*Press-Enterprise II*"); *see also El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147, 148 (1993). As Wisconsin courts, both historically and today, have recognized, a John Doe proceeding is a type of preliminary hearing in which a judge, acting as a judicial officer, may exercise his or her power to compel testimony and hear evidence in connection with making a probable cause determination. *See State v. Unnamed Defendant*, 150 Wis. 2d 352, 359 (Wis. 1989) (superseded by statute on other grounds as stated in *State ex rel. Williams v. Fiedler*, 282 Wis. 2d 486 (2005)).

John Doe proceedings are an outgrowth of the "procedure governing the determination of probable cause for the issuance of [arrest] warrants." *State v. Washington*, 83 Wis. 2d 808, 819 (Wis. 1978). The historical antecedent of section 968.26 is a statute that dates to the "latter part of the 19th century," and "provided that a magistrate upon complaint made to him that a crime has been committed 'shall examine, on oath, the complainant and any witness produced by him.'" *Id*. at 819, n. 6, citing sec. 4776, Wis. Rev. Stats. 1898, later renumbered sec. 361.02, Wis. Stats. 1925. That statute was "not intended to create a primarily investigative proceeding," but rather a mechanism for a magistrate to determine whether a crime had, in fact, been committed, and whether an arrest should be made. *Id*. And, while it was interpreted "[f]rom a relatively early date" to allow magistrates to require that witnesses appear and be examined (*id*. at 820), such investigative powers derived from, and were inextricably linked to, the magistrate's

duty to "obtain[] the real facts before issuing the warrant." *State v. Keyes*, 75 Wis. 288, 295 (Wis. 1889); *see also id.* at 298.[5]

In 1949, the Wisconsin Legislature enacted new provisions severing this traditional power of a magistrate to examine witnesses in connection with making a probable cause determination from the statutory procedures "for issuance of warrants generally," which are now found in sections 968.02–.04. *Washington*, 83 Wis. 2d at 819, n. 7. The "function of the John Doe judge," however, has remained most closely analogous to "that of the magistrate who determines whether there is probable cause to issue an arrest warrant." *Id.* at 821. Indeed, notwithstanding the John Doe judge's power to help identify the perpetrator of an alleged crime,[6] his or her function is, as a neutral magistrate, to make a probable cause determination. As the Wisconsin Supreme Court has explained:

> The John Doe judge is a judicial officer who serves an essentially judicial function. . . . "[He or she] should act with a view toward issuing a complaint or determining that no crime has occurred" and "must 'conduct himself [or herself] as a neutral and detached magistrate in determining probable cause *which is the basic function of . . . [the] proceeding*.'"

*Id.* at 823–24 (emphasis added, internal citations omitted).

Unlike grand jury proceedings, which "have traditionally been closed to the public and the accused," *Press-Enterprise II*, 478 U.S. at 10, John Doe proceedings were not viewed

---

[5] As the Wisconsin Supreme Court explained in 1889, "[w]hen this statute was first enacted the common-law practice was for the magistrate to issue the [arrest] warrant on a complaint of mere suspicion, . . . This statute was made to protect citizens from arrest and imprisonment on frivolous and groundless suspicion." *Id.* at 294–95.

[6] *Id.*; *see also* Note to sec. 361.02, Wis. Stats. 1947 (explaining that the magistrate in a John Doe proceeding "may subpoena witnesses and may continue hearing from time to time until identity of offender has been discovered").

historically as requiring secrecy. Nor were they seen as analogous to grand jury proceedings.[7]

As the Wisconsin Supreme Court stated in 1930: "No cases or texts or other authorities are cited

or found to the point that John Doe proceedings are secret, nor are any cited or found to the point

that they are on a parity with grand jury proceedings." *State ex rel. Alford v. Thorson*, 202 Wis.

31, *4–5 (Wis. 1930).

The Wisconsin Supreme Court has expressly acknowledged that John Doe proceedings

under section 968.26 are "presumptively open" to the public. *Unnamed Defendant*, 150 Wis. 2d

at 359. Thus, a John Doe judge "may" close a John Doe proceeding, but only to the extent

necessary to serve a "compelling interest." *Id.*; *see also State ex rel. Unnamed Person No. 1 v.*

*State (In re Doe)*, 660 N.W.2d 260 (Wis. 2003) (stating that "secrecy *may* be vital to the very

effectiveness of a John Doe proceeding," but that "any secrecy order 'should be drawn as

narrowly as is reasonably commensurate with its purposes'") (citations omitted, italics added).

---

[7] Any comparison between a John Doe proceeding and a grand jury proceeding, at least for purposes of the public's right of access, is misplaced. The tradition of a grand jury—which consists not of a single judge, but of ordinary citizens—that is enshrined in the Fifth Amendment pre-dates even the United States. And, "since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979). Thus, while John Doe proceedings have been traditionally open, and are presumptively open to the public under both state and federal law, there is generally "no First Amendment right of access to grand jury proceedings." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998). In any event, even assuming, *arguendo*, that John Doe proceedings are analogous to grand jury proceedings for purposes of the public's right of access—which they are not—in judicial proceedings ancillary to grand jury proceedings, courts are still required to evaluate the necessity for secrecy. *See* Fed. R. Crim. P. 6(e)(5); *Dow Jones & Co.*, 142 F.3d at 500–01; *id.* at 505 (where grand jury witness's identity had been "virtually proclaimed from the rooftops" by his attorney, the fact that he was a grand jury witness had "lost its character as Rule 6(e) material," and no longer warranted secrecy). Moreover, in this case, while the John Doe judge's secrecy order has itself been sealed, it appears that it attempts to impose secrecy that exceeds that which is permissible even in the grand jury context. For example, a court may not impose restrictions on the ability of witnesses to publicly disclose their testimony before a grand jury. *See* Fed. R. Crim. P. 6(e)(2)(A)-(B) ("no obligation of secrecy may be imposed" on a grand jury witness); s*ee also In re Grand Jury Proceedings (Miller)*, 493 F.3d 152 (D.C. Cir. 2007).

16

The Wisconsin Supreme Court has likewise found analogous proceedings, including probable cause hearings under section 968.02,[8] to be presumptively open. In a case pre-dating *Press Enterprise II*, the court concluded that a pre-indictment probable cause hearing—though not a "sitting of the court"—was nevertheless "subject to the same presumption of openness that applies to most judicial proceedings in Wisconsin." *State ex rel. Newspapers*, *Inc. v. Circuit Court for Milwaukee County*, 124 Wis. 2d 499, 505 (Wis. 1985).

> *(b)* **The Public Has A First Amendment Right Of Access To John Doe Proceedings**

In addition to being presumptively open to the public under Wisconsin law, John Doe proceedings, like other preliminary or probable cause hearings, are presumptively open to the public under federal law. The First Amendment presumes that there is a right of access to proceedings and documents (1) which have "'historically been open to the public,'" and (2) where "public access plays a significant positive role in the functioning of the process in question." *Press-Enterprise II*, 478 U.S. at 8; *Grove Fresh Distribs*., 24 F.3d at 897; *see also Globe Newspaper*, 457 U.S. at 606 (stating that this analysis "has been summarized as requiring examination of both 'logic' and 'experience'"). Applying this two-pronged test, the Supreme Court in *Press-Enterprise II* held that the public has a First Amendment right of access applicable to preliminary hearings. *Press-Enterprise II*, 478 U.S. at 13; *see also El Vocero de P.R.*, 508 U.S. at 148 (holding unconstitutional a provision of Puerto Rico's criminal procedure code providing that preliminary hearings "shall be held privately" unless the defendant requests otherwise). In so holding, the Court relied on the fact that similar pretrial proceedings "conducted before neutral and detached magistrates have been open to the public." *Press-*

---

[8]  Like section 968.26, this provision is also an outgrowth of the procedure governing the determination of probable cause for the issuance of an arrest warrant.

*Enterprise II*, 478 U.S. at 10.[9]  In addition, in considering whether "public access plays a significant positive role in the functioning" of preliminary hearings, the Court concluded that denying access to such proceedings would frustrate the "community therapeutic value of openness," and undermine "both the basic fairness of the [proceeding] and the appearance of fairness so essential to public confidence in the system."  *Id.* at 8 (quoting *Press-Enterprise I*, 464 U.S. at 508).

Thus, with respect to John Doe proceedings, "the experience in th[is] type or kind" of proceeding, not just in Wisconsin, but "throughout the United States," has been one of openness. *El Vocero de P.R.*, 508 U.S. at 150–51.  And it is precisely the type of proceeding for which public access plays a particularly significant positive role.  Indeed, that such proceedings are generally conducted at the behest of local prosecutors, and before a single John Doe judge, "makes the importance of public access" to John Doe proceedings "even more significant." *Press-Enterprise II*, 478 U.S. at 8 (citation omitted).  In "the absence of a jury," which has been "long recognized as an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge," public scrutiny is vital.  *Id.*

In light of the public's First Amendment right of access to John Doe proceedings and related court documents,[10] section 968.26 cannot be read to authorize use of a discretionary

---

[9]  As an example, the Court noted that in 1807, in connection with Aaron Burr's trial for treason, Chief Justice Marshall conducted a probable cause hearing in the Hall of the House of Delegates in Virginia, "the courtroom being too small to accommodate the crush of interested citizens."  *Id.*

[10]  As discussed above, the Seventh Circuit has recognized that the presumption in favor of public access, not only to court proceedings, but also to related judicial records, is "of constitutional magnitude."  *See In re Continental Illinois Sec. Litigation*, 732 F.2d at 1308–09 (citing *Associated Press v. District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (holding that there is a First Amendment right of access to pretrial documents, finding "no reason to distinguish between pretrial proceedings and the documents filed in regard to them")).

standard for closing proceedings or sealing court records in this litigation that is "insufficiently exacting to protect public access." *El Vocero de P.R.*, 508 U.S. at 150 (holding Puerto Rico statute that allowed "hearings to be closed upon the request of the defendant, without more" unconstitutional); *Press-Enterprise II*, 478 U.S. at 14–15 (holding California statute that allowed magistrate to close hearings only upon a determination that there was a substantial likelihood of prejudice to the defendant unconstitutional). Nor may that statute be read to mandate automatic, permanent, or otherwise unconstitutional restrictions on the public's right of access. *See Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989) (holding unconstitutional a state statute directing court officers to automatically seal the records of cases in which the defendant "'has been found not guilty' or 'a finding of no probable cause has been made by the court")."[11] In short, regardless of the John Doe judge's reasons for deviating from the presumption that John Doe proceedings are open to the public, the standard to be applied *by this Court* remains the same. Any information related to the John Doe proceeding that is filed on this Court's docket may *only* be sealed if secrecy is necessary to serve a compelling interest, and *only* to the extent necessary to serve that interest.

### 2. Any Interest In Protecting The "Effectiveness" Of The John Doe Proceeding Cannot Justify The Sealing Orders

Under Wisconsin law, secrecy is permissible only where "*vital* to the very effectiveness of a John Doe proceeding." *In re Doe*, 660 N.W.2d at 277 (emphasis added). More specifically,

---

[11] To the extent the language of section 968.26, subdivision (3), stating that "if the proceeding is secret, the record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused," can only be read as requiring automatic, permanent sealing of court records concerning "secret" John Doe proceedings, that provision cannot withstand heightened scrutiny. *See id.* at 506; *see also Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89, 100-101 (D. Mass. 1993) (holding unconstitutional a Massachusetts statute that denied public access to court-maintained indices of defendants in closed criminal cases "without an individualized judicial determination on an adequate record that a particular defendant's name must be sealed or impounded to serve a compelling state interest").

only where secrecy is *necessary* for a John Doe judge to effectively "investigat[e]" whether a crime has occurred have Wisconsin courts found that interest compelling enough to justify secrecy. *Id.* ("The policy underlying secrecy is directed to promoting the effectiveness of the investigation."). No such interest is present here.

Various state and national media outlets have already reported a considerable amount of information concerning the John Doe proceeding involving O'Keefe and the Club—including detailed information obtained due to defendants' failure to properly redact their filings in this case. For example:

- *The Wall Street Journal* reported that "special prosecutor Francis Schmitz has hit dozens of conservative groups with subpoenas demanding documents related to the 2011 and 2012 campaigns to recall Governor Walker and state legislative leaders," including "the League of American Voters, Wisconsin Family Action, Wisconsin Manufacturers & Commerce, Americans for Prosperity–Wisconsin, American Crossroads, the Republican Governors Association, Friends of Scott Walker, and the Republican Party of Wisconsin;" that it has seen copies of two subpoenas demanding "all memoranda, email . . . correspondence, and communications" between the subpoenaed party and 29 conservative groups and "all records of income received, including fundraising information and the identity of persons contributing to the corporation;" that O'Keefe received one of the subpoenas in early October 2013; that "at least three of the targets had their homes raided at dawn, with law-enforcement officers turning over belongings to seize computers and files;" and that "[a] person who has seen one of the Wisconsin search warrants tells us that the warrants were executed based on the request of Dean Nickel, who filed an affidavit for probable cause."[12]

- Both *The Wall Street Journal* and *Washington Post* reported that it obtained a copy of a sealed order by John Doe judge Gregory Peterson quashing subpoenas sent to conservative groups because they "do not show probable cause that the moving parties committed any violations of the campaign finance laws;" that Judge Peterson's order states that campaign finance violations require "express advocacy," that "the State is not claiming that any of the independent organizations expressly

---

[12] "Wisconsin Political Speech Raid," Nov. 18, 2013, *available at* http://online.wsj.com/news/articles/SB10001424052702304799404579155953286552832.

advocated" for any candidate, and that the State is alleging only "issue advocacy;" that the quashed subpoenas were sent to Friends of Scott Walker, Wisconsin Manufacturers & Commerce Inc., the Wisconsin Club for Growth, and Citizens for a Strong America, as well as their officers and directors; that "the subpoenas asked for all information and data and communications stretching back to 2009" and "sought both donor identities and internal communications;" and that the "first John Doe judge, retired Kenosha County Circuit Judge Barbara Kluka, recused herself from the case" after authorizing the subpoenas.[13]

- The *Wisconsin Reporter* reported that "[l]arge sections" of a redacted copy of Dean Nickel's motion to dismiss this case "became visible when copying and pasting them into a Word document;" that Nickel's motion quotes extensively from Judge Peterson's sealed quashing order; that, according to Nickel, he only "filed the original affidavit for probable cause in the search warrants that were executed in the John Doe raids," he is "not responsible" for initiating an investigation into campaign finance violations, and Judge Kluka "determined that there was a reasonable belief that a crime had occurred . . . based on affidavits and evidence" showing possible campaign finance violations; that Wisconsin's attorney general refused to lead the John Doe investigation due to a conflict of interest; and that the investigation spans Columbia, Dane, Dodge, Iowa, and Milwaukee counties. The *Wisconsin Reporter* links to the unredacted filing.[14]

Given the information that has already been disclosed to the public concerning the John Doe proceeding, broad secrecy cannot now be found "vital" to its "effectiveness." *In re Doe*, 660 N.W.2d at 277. Indeed, in light of these disclosures, it is difficult to see how any "investigatory" purpose that might arguably be served by secrecy in other circumstances would have any application to the highly-publicized proceeding at issue here. *See id*. at 277–78

---

[13] "Wisconsin Political Speech Victory," Jan. 10, 2014, *available at* http://online.wsj.com/news/articles/SB10001424052702303393804579312670195586080; Rosalind S. Helderman, "Scott Walker, eyeing 2016, faces fallout from probes as ex-aide's emails are released," Feb. 18, 2014, *available at* http://www.washingtonpost.com/politics/scott-walker-eyeing-2016-faces-fallout-from-investigations-as-ex-aides-e-mails-are-released/2014/02/18/8b26bfa4-98b2-11e3-b931-0204122c514b_story.html.

[14] *See, e.g.*, M. D. Kittle, "Secret agent Dean Nickel's defense: Dean Nickel is not responsible," *Wisconsin Reporter*, Mar. 13, 2014, *available at* http://watchdog.org/132551/secret-civil-right-lawsuit/; M. D. Kittle, "D'oh! John Doe prosecutors claim secrecy protection—after filing secret documents," *Wisconsin Reporter*, Mar. 14, 2014, *available at* http://watchdog.org/132803/secrecy-prosecutors-lawsuit/.

(citation omitted) (explaining that Wisconsin law authorizes John Doe secrecy orders to prevent the target of the investigation and other interested parties from "collecting perjured testimony," "tampering with prosecutive testimony," and "secreting evidence;" to render witnesses "more free in their disclosures;" and to prevent "untrue or irrelevant" testimony from becoming public).

Plainly, the unsealing of information in the parties' filings—whether deemed "investigatory" or not—that has been "announced to the world" or may be "surmised from what is already in the public record" can "hardly pose" any threat to the effectiveness of the John Doe proceeding. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) (unsealing court documents containing publicly disclosed information concerning an ongoing criminal investigation); *Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (explaining that disclosure of publicly disclosed information posed no "additional threat to [an] ongoing criminal investigation"). As to any specific pieces of sealed information that have not yet been disclosed publicly, the government's "formidable task" of demonstrating that a compelling interest in protecting the proceeding's "effectiveness" necessitates the information's secrecy—notwithstanding the nature and number of public disclosures to date— is, more than likely, an insurmountable obstacle. *In re Associated Press*, 162 F.3d at 506. *See*, *e.g.*, *Va. Dep't of State Police*, 386 F.3d at 579 (citations omitted) (emphasizing that "it is not enough simply to assert th[e] general principle" that an investigation is at stake "without providing specific underlying reasons," based on "specific facts and circumstances," that would demonstrate how "the integrity of the investigation reasonably could be affected").

### C.   The Press And The Public Have A Substantial, Overriding Interest In Obtaining Access To The Parties' Unredacted Filings In This Case

The strong presumption in favor of the public's constitutional and common law rights of access is particularly powerful here because suppression would impair the public's ability to

evaluate the actions of both the judicial *and* executive branches. Defendants are government officials sued in their official capacities for alleged abuses of power that plaintiffs claim infringed their constitutional rights. *See Smith*, 956 F.2d at 650 (emphasizing that "[t]he appropriateness of making court files accessible is accentuated in cases where the government is a party"). This dispute is of intense public interest and importance. On the one hand, O'Keefe and the Club allege that the government officials misused the state John Doe procedure to unconstitutionally retaliate against them for their political speech. Redacted Compl. ¶¶ 35-42, ECF No. 1, Feb. 10, 2014. On the other hand, the government officials maintain that they legitimately targeted O'Keefe and the Club for possible violations of Wisconsin's campaign finance laws in connection with hotly contested state elections. Resp. in Opp. to Mot. for Preliminary Inj., ECF No. 48, Mar. 12, 2014. Here, the public has a right not just to observe the functioning of its court system, but also "to know what the executive branch is about." *Smith*, 956 F.2d at 650.

The infringement on the public's right of access is acute because O'Keefe and the Club have made clear that, but for the imposed secrecy of the John Doe proceeding, they would make the sealed information public. The Supreme Court has long recognized that the public's interest in receiving news is of constitutional dimensions. *See Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972). "[W]here a speaker [of that information] exists," the First Amendment's protection broadly extends "to the communication, to its source and to its recipients both." *See Virginia Pharm. Bd. v. Virginia Consumer Council*, 425 U.S. 748, 756-57 & n.15 (1976). The press, therefore, has a substantial interest in receiving information from willing speakers and transmitting that knowledge to the public that, in turn, has a substantial interest in receiving it. Although they moved to seal their filings to comply with the secrecy order, O'Keefe and the

Club have objected to that order "and the concomitant lack of public scrutiny" of the John Doe investigation. They contend that the "secret" nature of the proceedings has enabled defendants to abuse their official power without public oversight, and to selectively leak information to the press, while simultaneously preventing plaintiffs from publicly defending themselves. Redacted Compl. ¶ 72, ECF No. 1, Feb. 10, 2014. Indeed, O'Keefe has publicly stated that "he wants the public to know what is going on."[15] Because O'Keefe and the Club are willing speakers who wish to disclose information about the investigation, members of the public have an enhanced First Amendment right as listeners to receive the information sealed on this Court's docket.

## CONCLUSION

The Coalition respectfully requests that this Court grant its motion to intervene and unseal, vacate the Court's sealing orders, and unseal the entirety of the parties' filings in this case. If the Court determines that a compelling interest of higher value necessitates that certain specific information remain under seal for a limited period of time, the Coalition respectfully requests that the Court prepare a sealing order narrowly tailored to that interest that sets forth the Court's findings in sufficient detail to permit meaningful appellate review, and release redacted versions of the sealed records as appropriate.

---

[15] "Wisconsin Political Speech Raid," Nov. 18, 2013, *available at* http://online.wsj.com/news/articles/SB10001424052702304799404579155953286552832.

Dated:  May 1, 2014                           Respectfully submitted,


                                              By:____/s/ *Thomas H. Dupree Jr.*____

Michelle S. Stratton                          Theodore J. Boutrous Jr.*
Shane Pennington                              Thomas H. Dupree Jr.
Baker Botts L.L.P.                            Gibson Dunn & Crutcher LLP
One Shell Plaza                               1050 Connecticut Avenue NW
910 Louisiana                                 Washington, D.C. 20036
Houston, Texas 77001                          (202) 955-8500
(713) 229-1234                                (202)467-0539 (fax)
(713) 229-1522 (fax)                          tboutrous@gibsondunn.com
michelle.stratton@bakerbotts.com              tdupree@gibsondunn.com
shane.pennington@bakerbotts.com
                                              Katie Townsend*
                                              Gibson Dunn & Crutcher LLP
                                              333 South Grand Avenue
                                              Los Angeles, California 90071
                                              (213) 229-7000
                                              (213) 229-7520 (fax)
                                              ktownsend@gibsondunn.com

*Counsel for the Reporters Committee for Freedom of the Press, American Society of News Editors, Wisconsin Broadcasters Association, Wisconsin Freedom of Information Council, and Wisconsin Newspaper Association*


* Admission to the Eastern District of Wisconsin pending