## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ERIC O'KEEFE and WISCONSIN CLUB FOR
GROWTH, Inc.,

        Plaintiffs,

    -vs-

FRANCIS SCHMITZ, JOHN CHISHOLM,
BRUCE LANDGRAF, DAVID ROBLES, and
DEAN NICKEL, in their official and personal
capacities, and GREGORY PETERSON, in his
official capacity,

        Defendants,

    -vs-

REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS, AMERICAN SOCIETY OF
NEWS EDITORS, WISCONSIN
BROADCASTERS ASSOCIATION, WISCONSIN
FREEDOM OF INFORMATION COUNCIL, and
WISCONSIN NEWSPAPER ASSOCIATION,

        Intervenors,

    -vs-

UNNAMED INTERVENOR No. 1 and
UNNAMED INTERVENOR No. 2,

        Intervenors.

**Case No. 14-C-139**

## DECISION AND ORDER

Two competing motions are currently pending before the Court. First, the

Reporters Committee for Freedom of the Press, American Society of News Editors,

Wisconsin Broadcasters Association, Wisconsin Freedom of Information Council, and Wisconsin Newspaper Association (collectively, the "Coalition") moved to intervene and to unseal all of the documents that the Court has allowed to be filed under seal in this case. Second, two people moved to intervene anonymously for the purpose of maintaining the Court's sealing orders (the "Unnamed Intervenors").

The Unnamed Intervenors are targets of a criminal investigation into conduct which, in the opinion of this Court, and also that of Judge Gregory Peterson, is not illegal. ECF No. 181, *O'Keefe v. Schmitz*, --- F. Supp. 2d ---, 2014 WL 1795139 (E.D. Wis. May 6, 2014). Still, the Unnamed Intervenors can't defend themselves publicly for fear of violating the investigation's mandate of secrecy. Aside from that restriction, the Unnamed Intervenors simply do not want their private affairs to become public, which is a legitimate and natural reaction when being investigated by law enforcement authorities, and is also a protection afforded any "innocent accused" in a John Doe proceeding. Meanwhile, the plaintiffs in this case — Eric O'Keefe and the Wisconsin Club for Growth — are "willing speakers" regarding the John Doe, and the prosecutors who formerly insisted upon secrecy now want to disregard it. Accordingly, the Unnamed Intervenors' motion to intervene and to proceed anonymously is granted. Fed. R. Civ. P. 24(a); *In re Sealed Case*, 237 F.3d 657, 663-64 (D.C. Cir. 2001) (targets of FEC investigation have a "legally cognizable interest in maintaining the confidentiality of the documents the FEC seeks to disclose in the public record"). For reasons that will become apparent, the Unnamed Intervenors'

interests are not adequately represented by any of the other parties to this litigation.

## I.

Upon allowing the Coalition to intervene, the Court invited all of the parties in this litigation to explain their respective positions on the Coalition's motion to unseal. In an about-face from their initial stance, the defendants[1] now support unsealing the entire record in this case. The plaintiffs also support unsealing, with the exception of four documents which, they argue, should remain entirely under seal, and also five documents that should be redacted to some extent. ECF No. 218-2 (Table of Sealed Filings).

As the Court noted when it granted the Coalition's motion to intervene, the motions to seal in this case were granted as a matter of course "out of deference to the secrecy order in the state-court John Doe Proceedings." ECF No. 192, May 7 Decision and Order at 1-2. Indeed, at the very outset of this litigation, the plaintiffs moved for leave to file certain materials under seal because "the John Doe proceeding is governed by a sweeping 'Secrecy Order,' which purports to prohibit the disclosure of virtually all information regarding the investigation — including the nature of and bases for Plaintiffs' constitutional claims and right to relief." ECF No. 3. Thus, the plaintiffs sought leave to file materials under seal "in order to comply with the significant restrictions imposed upon them by the Secrecy Order entered in the John Doe

---

[1] One of the defendants, Special Prosecutor Francis Schmitz, takes a slightly different stance, discussed below. Judge Peterson "takes no position" on the matter and "neither supports nor opposes the motion."

proceeding, . . ." *Id.* The defendants followed suit upon their initial appearances in this case. *See* ECF No. 33 ("As already pointed out by Plaintiffs, the John Doe proceeding is governed by a secrecy order that limits the disclosure of information regarding the investigation"). Later, when the defendants asked the Court to stay injunction proceedings pending resolution of their motions to dismiss, the defendants argued that the Secrecy Order hampered their ability to present an effective defense. ECF No. 35. Subsequently, the defendants obtained authorization from Judge Peterson to "use the information, transcripts, documents and other materials gathered in [the John Doe proceedings] for all purposes related to the defense of" this lawsuit. ECF No. 117, Ex. A (Order for Use of Information). All such information, of course, was filed under seal.

Now the defendants, and to some extent the plaintiffs, seek to jettison the Secrecy Order entirely in favor of full-blown public disclosure. The plaintiffs, at least, take a somewhat measured approach. First, they argue that the Coalition's motion should be granted in most respects because they are willing speakers and the public has a right to know about the "enormous injury that Defendants' actions have inflicted on Wisconsin's political and public-policy communities." ECF No. 218, at 5. On the other hand, the plaintiffs seek to keep under seal documents that "while doing little in themselves to advance public understanding of the John Doe investigation, implicate Plaintiffs' First Amendment privilege and, if disclosed at all, would require substantial redactions to protect personal, financial, and other confidential information." *Id.* at 6.

As for the defendants, they have reversed their previous position. The defendants want everything unsealed under the theory that the John Doe investigation has become so widely publicized that secrecy is no longer justified. Moreover, in response to the plaintiffs' proposal to maintain certain documents under seal, four of the defendants — Milwaukee County District Attorney John Chisholm, his assistants Bruce Landgraf and David Robles (collectively, the Milwaukee Defendants), and Government Accountability Board investigator Dean Nickel — lodged vociferous objections. In a submission that smacks of irony itself,[2] the Milwaukee Defendants contend that it is "beyond irony that the plaintiffs and their counsel now ask the Court to block media access to the documents that outline the investigation and detail the reasons why the plaintiffs' conduct was subject to scrutiny. Having rarely passed on an opportunity to comment on the 'evidence' and excoriate the defendants in the press, plaintiffs and their counsel ask the Court to be complicit in preventing a public airing of the evidence." ECF No. 221, at 1-2.[3] The position of the defendants here is at odds with their duty as prosecutors which is to see that in any John Doe proceeding the rights of the innocent accused are protected in pursuit of a criminal investigation.

---

[2] In particular, the Milwaukee Defendants' characterization of the plaintiffs' lawsuit as "baseless" is completely divorced from the reality of the conclusion reached by this Court.

[3] *See also* Nickel Objection, ECF No. 222, at 4 ("It is fundamentally unfair to allow Plaintiffs to publicly accuse Nickel and the other Defendants of conducting a bad-faith investigation while at the same time asking this Court to keep hidden from the public the documents that form the basis for Nickel's signing of the affidavit and the basis for the investigation in the first instance. By making these public allegations against Nickel, Plaintiffs should not be permitted to serve as a roadblock to prevent the public from viewing the documents that support Nickel and the other Defendants' defenses").

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424-25 (1983) (grand jury secrecy is "as important for the protection of the innocent as for the pursuit of the guilty"). That duty would seem to dictate that the defendants' position on this issue should coincide with that of the Unnamed Intervenors even though the information gained through the John Doe investigation is being used in this civil action. The defendants by their position appear to seek refuge in the Court of Public Opinion, having lost in this Court on the law.

That being said, Special Prosecutor Francis Schmitz does not resort to such tactics. Schmitz does not affirmatively advocate for unsealing, nor does he oppose it. Moreover, as the Unnamed Intervenors emphasize in their most recent filing, Schmitz concedes that there "may be reason to maintain secrecy in order to protect *non-party individuals identified in documents uncovered in the course of the investigation . . .*" ECF No. 211, at 3 (emphasis added). Such are the interests of the Unnamed Intervenors, which must be balanced against those of the Coalition, the general public, and the primary parties to this litigation.

## II.

The public's right to access court records and documents is well-established. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)). Public scrutiny of the court system promotes community respect for the law, provides a check on the activities of judges and litigants, and fosters more accurate fact-finding. *Id.* (citing

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)).  The "public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding.  That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case."  *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

The public's right of access arises from both the common law and the First Amendment, but neither aspect of the right is absolute.  "More general in its contours, the common-law right of access establishes that court files and documents should be open to the public unless the court finds that its records are being used for improper purposes."  *Grove Fresh* at 897.  The Court will begin its analysis under the First Amendment because, as courts have recognized, the common law "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment."  *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).  If the Coalition has no right of access under the First Amendment, it stands to reason that the Coalition has no such right under the common-law as well.

Under the First Amendment, courts consider whether "the place and process have historically been open to the press and general public," and also whether "public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986).  Although

"many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Id.* at 8-9 (quoting *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979)).

To use the Unnamed Intervenors' turn of phrase, Wisconsin's John Doe procedure is a "kissing cousin" of the grand jury. As this Court already recognized, the John Doe is "an investigatory device, similar to a grand jury proceeding, but lacking the oversight of a jury." ECF No. 83, *O'Keefe v. Schmitz*, 2014 WL 1379934, at *2 (E.D. Wis. April 8, 2014). Wisconsin courts have repeatedly recognized that a John Doe proceeding is a "one-man grand jury." *State v. Washington*, 266 N.W. 2d 597, 603 n.7 (Wis. 1978); *Wis. Family Counseling Servs., Inc. v. State of Wis.*, 291 N.W. 2d 631, 635 (Wis. Ct. App. 1980) (noting that the John Doe judge "functions as a one-man grand jury[,] an investigatory body that antedates the constitutions of the United States and the state of Wisconsin where its investigatory functions, ancillary to its historical authority to return criminal indictments, is preserved"). A John Doe proceeding "requires a judge to assume two functions: investigation of alleged violations of the law and, upon a finding of probable cause, initiation of prosecution." *State v. Unnamed Defendant*, 441 N.W. 2d 696, 698 (Wis. 1989).

John Doe proceedings are "presumptively open," *id.*, but almost invariably,

they are closed.  *See, e.g., In re Doe*, 766 N.W. 2d 542 (Wis. 2009); *In re John Doe Proceeding*, 680 N.W. 2d 792 (Wis. 2004); *In re John Doe Proceeding*, 660 N.W. 2d 260 (Wis. 2003).  The justifications for John Doe secrecy mirror those that are cited in support of grand jury secrecy.  *United States v. Crumble*, 331 F.2d 228, 231 (7th Cir. 1964) (the "secrecy provision of the Wisconsin [John Doe] statute has been likened to the secrecy attending grand jury testimony").  Those reasons were cited by the John Doe judge in support of the Secrecy Order at issue in this case.  *State v. Cummings*, 546 N.W. 2d 406, 411-12 (Wis. 1996) (citing "a number of reasons why such secrecy is vital to the very effectiveness of the John Doe proceeding," including "keeping knowledge from an unarrested defendant which could encourage escape," "preventing the defendant from collecting perjured testimony for the trial," "preventing those interested in thwarting the inquiry from tampering with prosecutive testimony or secreting evidence," "rendering witnesses more free in their disclosures," and "preventing testimony which may be mistaken or untrue or irrelevant from becoming public").  As the United States Supreme Court explained:

> If preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.  There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.  Finally, by preserving the secrecy of the proceedings, *we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule*.

*Douglas Oil*, 441 U.S. at 219 (emphasis added); *see also United States v. Rose*, 215 F.2d 617, 629 (3d Cir. 1954), cited with approval in *Douglas Oil* at 219, n.10 and *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-82, n.6 (1958), explaining that one purpose of secrecy is to "protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

Thus, there is no presumptive, unqualified First Amendment right to access materials that are governed by the John Doe Secrecy Order.  John Doe proceedings, like grand jury proceedings, are historically closed.  *Washington*, 266 N.W. 2d at 602 (John Doe proceedings "typically operate in complete secrecy").  Nor does public access play a "significant positive role" in the functioning of the John Doe.  *Press-Enterprise*, 478 U.S. at 8.  The dual function of a grand jury is to "determine if there is probable cause to believe a crime has been committed and to protect citizens against unfounded prosecutions."  *Matter of the Special February 1975 Grand Jury (Lopez)*, 565 F.2d 407, 411 (7th Cir. 1977).  So too, the John Doe:

> When [the John Doe] statute was first enacted the common-law practice was for the magistrate to issue the warrant on a complaint of mere suspicion, and he was protected in doing so.  This was found to be a very unsafe practice.  Many arrests were made on groundless suspicion, when the accused were innocent of the crime and there was no testimony whatever against them.  This statute was made to protect citizens from arrest and imprisonment on frivolous and groundless suspicion.

*State ex rel. Reimann v. Circuit Court*, 571 N.W. 2d 385, 390-91 (Wis. 1985) (quoting

*State ex rel. Long v. Keyes*, 44 N.W. 13, 15 (Wis. 1889)).  In this context, secrecy is "as important for the protection of the innocent as for the pursuit of the guilty."  *Sells*, 463 U.S. at 424-25.  Where, as here, the investigation has not concluded — more than that, it has been halted, and deemed unlawful by two separate judges — the ongoing risk to the Unnamed Intervenors' reputations and livelihoods is all too real.  "A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning him if he were not subsequently indicted."  *In re Grand Jury of Cuisinarts, Inc.*, 665 F.2d 24, 33 (2d Cir. 1981); *Lucas v. Turner*, 725 F.2d 1095, 1100 (7th Cir. 1984) ("One of the principal reasons for preserving the secrecy of grand jury proceedings is to protect the reputations of both witnesses and those under investigation").

Regarding the common-law right to access, the answer is more straightforward, and not surprising given the foregoing analysis.  As the statute itself provides, if the "proceeding is secret, the record of the proceeding and the testimony taken *shall not be open to public inspection by anyone* except the district attorney *unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used.*"  Wis. Stat. § 968.26(3) (emphases added).  This is a "clear statement of legislative policy and constitutes a specific exception to the public records law.  It is critical that when a John Doe judge issues a secrecy order pursuant to Wis. Stat. § 968.26, the judge must be assured that secrecy will be preserved . . ."  *In re*

*John Doe Proceeding*, 660 N.W. 2d 260 (Wis. 2003). Obviously, the John Doe hasn't generated any criminal prosecutions, so there is no common-law right of access.

Ultimately, the Court agrees with the Unnamed Intervenors that it must not permit the original parties to this litigation to "safeguard their own interests to the detriment of non-parties who have not 'opened the door' to exposure by filing suit, who have consistently sought to abide by secrecy orders and to safeguard their privacy, and who will suffer far greater personal harm than any organization can assert." ECF No. 232-2, at 12. Indeed, while the Court appreciates the intense public interest surrounding this case, the zealous pursuit of information threatens to envelop and irreparably harm the Unnamed Intervenors, alongside all the other targets of the John Doe investigation who have suffered in silence. In this manner, wholesale unsealing would actually undermine the Court's injunction by subjecting those who facilitated protected political speech to unwanted public scrutiny.

### III.

That being said, the plaintiffs' interests do align with the Unnamed Intervenors in some respects. The materials that the plaintiffs insist should remain entirely under seal include the Club's confidential documents and records, private communications, and donor records that were unlawfully obtained. These documents largely consist of evidence that the defendants gathered during the course of their investigation into what they insist is illegal issue advocacy coordination. ECF Nos. 53-35 (Ex. J), 110-22 (Ex. A), 110-24 (Ex. C), 110-25 (Ex. D), 110-27 (Ex. F), 117-8 (Ex. B), 117-9 (Ex. C), and

117-10 (Ex. D).[4]  For the reasons already discussed, the Coalition does not have an absolute, unqualified right to access this information.  This evidence is also protected from disclosure because it implicates the plaintiffs' First Amendment privilege against the "compelled disclosure of political associations."  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003) ("The Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation").  This First Amendment principle is recognized and reinforced by right to remain anonymous as a 501(c)(4) donor.

Moreover, the evidence reflected in these docket entries was completely irrelevant to the Court's preliminary injunction, which involved a legal analysis regarding the proper scope of campaign finance regulations.  ECF No. 181, May 6 Decision and Order at 19; 2014 WL 1795139, at *9 ("A candidate's coordination with and approval of issue advocacy speech, along with the fact that the speech may benefit his or her campaign because the position taken on the issues coincides with his or her own, does not rise to the level of 'favors for cash.'  Logic instructs that there is no room for a *quid pro quo* arrangement when the views of the candidate and the issue advocacy organization coincide").  In other words, the Court's ruling would have been the same even in the absence of this evidence because, as the Court held, regulation of

---

[4] The last three entries are duplicates of ECF Nos. 53-35, 110-24, and 110-27, respectively. ECF No. 110-24 is largely duplicative of 110-22.

coordinated issue advocacy is unconstitutional. The Coalition has no right to access this evidence because the Court did not rely upon any of it in "determining the litigants' substantive rights." *Smith v. U.S. Dist. Ct. for S.D. of Ill.*, 956 F.2d 647, 650 (7th Cir. 1992).

As for the balance of the record, the proper scope of disclosure implicates the "willing speaker"[5] doctrine. *Bond v. Utreras*, 585 F.3d 1061, 1077-78 (7th Cir. 2009); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83 (2d Cir. 2003) (the First Amendment protects "not only the right to engage in protected speech, but also the right to receive such speech" where a "willing speaker exists"). Relatedly, the invocation of grand jury interests is not "some talisman that dissolves constitutional protections." *Butterworth v. Smith*, 494 U.S. 624, 630 (1990) (quoting *United States v. Dionisio*, 410 U.S. 1, 11 (1973)). Thus, the Court must balance the parties' First Amendment rights to publicize information about the John Doe investigation — and by extension, the rights of the press and the general public to receive such information — against the privacy interests of the Unnamed Intervenors. *Id.*

For many of the reasons already stated, this balance tips largely in favor of privacy. At the same time, keeping *everything* under seal would likely be an overbroad remedy. This is particularly true because O'Keefe seeks to publicize "information relating to alleged governmental misconduct — speech which has

---

[5] The defendants do not advance an argument under the "willing speaker" doctrine, but the concept should apply to them to the extent that they argue in favor of unsealing.

traditionally been recognized as lying at the core of the First Amendment." *Id.* at 632. Moreover, the Court agrees with the general consensus that much of the record compiled in this case has become public in any event. The problem, at least from the perspective of the Unnamed Intervenors, is that they have no idea what information is under seal, leaving them no choice but to argue in favor of maintaining all of the Court's sealing orders. Therefore, the Court will direct the plaintiffs and the defendants to consult with the Unnamed Intervenors regarding what documents should remain under seal and what information should remain redacted. Obviously, this means that the plaintiffs and the defendants must allow the Unnamed Intervenors to access the sealed record in this case. The plaintiffs, the defendants, and the Unnamed Intervenors should then submit a report to the Court explaining their respective positions regarding sealed information.[6] In this manner, the Court will be better-positioned to strike an appropriate balance between the privacy interests of the Unnamed Intervenors and the public's right to gain access to the record.[7]

Finally, on June 16, the Seventh Circuit granted an unopposed motion to unseal certain documents. The Unnamed Intervenors filed an emergency motion to stay, but the Seventh Circuit denied this motion and immediately unsealed certain documents that had been sealed on the Seventh Circuit's docket. The documents unsealed by the

---

[6] Any unsealed documents must comply with Fed. R. Civ. P. 5.2 (Privacy Protection For Filings Made With the Court).

[7] The plaintiffs, the defendants, and the Unnamed Intervenors should also consider the possibility of developing a Protective Order to govern future proceedings and filings in this case.

Seventh Circuit correspond to the following district court docket entries that are currently redacted or under seal: ECF Nos. 1 (and accompanying exhibits), 4, 60, and 87. Therefore, the Unnamed Intervenors' motion to maintain sealing is now moot with respect to these docket entries.

***

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1.      Schmitz's motion to withdraw his motion for a protective order [ECF No. 211] is **GRANTED**, such that Schmitz's motion for a protective order [ECF No. 119] is **DENIED** as moot;

2.      Schmitz's motion for leave to file document under seal [ECF No. 175] is **GRANTED**;

3.      The Unnamed Intervenors' motions to seal disclosure statements and pleadings, to proceed pseudonymously, to intervene, and to seal their reply brief [ECF Nos. 209, 212, 219 and 233] are **GRANTED**;

4.      The Coalition's motion to unseal [ECF No. 172] is **DENIED** and the Unnamed Intervenors' motion to maintain sealing [ECF Nos. 212 and 219] is **GRANTED** with respect to the following documents: ECF Nos. 53-35 (Ex. J), 110-22 (Ex. A), 110-24 (Ex. C), 110-25 (Ex. D), 110-27 (Ex. F), 117-8 (Ex. B), 117-9 (Ex. C), and 117-10 (Ex. D);

5.      The plaintiffs' motions to file various materials under seal [ECF Nos. 217 and 239] are **GRANTED**;

6.      The Milwaukee Defendants' motion for leave to file materials under seal [ECF No. 236] is **DENIED**; and

7.      The plaintiffs, the defendants, and the Unnamed Intervenors are directed to file a joint report regarding the extent to which the balance of the record in this case should be unsealed within **fourteen (14) days** of the date of this Order.

Dated at Milwaukee, Wisconsin, this 19th day of June, 2014.

**SO ORDERED:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**